## Home Health Care Management Inc. v. Wilson School District

C.P. of Berks County, no. 99-1686.

*James M. Lillis,* for petitioner.
*Jon S. Malsnee,* for respondent.

SCHAEFFER, *S.J.,* February 17, 2000—Before the court is the issue of whether petitioner or the respondent has the burden of proof in a case involving a challenge to the assessment of business privilege taxes against the petitioner, Home Health Care Management Inc.

Respondent, the Wilson School District, determined that Home Health Care Management Inc. is liable for business privilege taxes pursuant to its business privilege tax resolution and regulations. Petitioner HHC contends that it is exempt from said tax because of its status as a charitable institution pursuant to the Institutions of Purely Public Charities Act of November 26, 1997, Act 55, 10 P.S. §371 et seq.

HHC is a not-for-profit corporation, qualified as an Internal Revenue Code section 501 C-3 charitable organization, organized for the purpose of providing administration and management services necessary and exclusively for the operation of other charitable health organizations.

On August 15, 1997, Wilson School District notified HHC that it would be arranging an audit for purposes of assessing tax liability.

On November 9, 1998, counsel for Wilson School District issued a "final decision" regarding the tax status of HHC. On November 21, 1998, Wilson School District mailed a document entitled "Business privilege tax audit results" to Ms. Lucille D. Gough, president and CEO of HHC.

On December 23, 1998, a hearing was held where HHC explained its operations, its relationships with other health care organizations, and its status as a nonprofit corporation.

On January 20, 1999, counsel for the school district sent its determination, that HHC was taxable, to counsel for HHC.

On February 19, 1999, petitioner filed its petition for review of determination of Wilson School District pursuant to section 706 of the Pennsylvania Judicial Code. On March 17, 1999, the court issued a rule to show cause on respondent.

On April 16, 1999, respondent answered the petition, claiming that HHC is a business and demanding that HHC prove its position that it operates exclusively for charitable purposes. A hearing was set for May 21, 1999, but was continued by agreement because counsel for petitioner was on active duty with the Air National Guard in Kosovo.

Argument was held on September 30, 1999 on the issues of presumption of exemption and the burden of proof, and continued to November 24, 1999 to permit the parties time to submit stipulations of fact to narrow the issues. The parties were given an extension of time to brief the issues. Petitioner filed its prehearing memorandum on November 26, 1999. Respondent did not file a brief.

The stipulation of facts filed by the parties is as follows:

(1) Home Health Care Management Inc. was incorporated in 1987 on a nonprofit, not-for-gain basis.

(2) HHC has an annual program revenue of less than $10,000,000 annually for tax years 1992, 1993, 1994, 1995, 1996, 1997 and 1998.

(3) HHC is exempt from state taxes pursuant to §204(10) of the Tax Reform Code of 1971, 72 P.S. §7204(10) by certificate issued by the Commonwealth of Pennsylvania on May 14, 1999.

(4) Berks Visiting Nurse Association and Berks Home Care were incorporated on a nonprofit, not-for-gain basis. Respondent does not challenge the exempt status from the school district's privilege tax of either corporation.

(5) During years subject of the audit by Wilson School District, HHC has provided management services exclusively to BVNA and BHC pursuant to management agreements, and had received consideration limited to that portion of HHC's costs for such services attributable to the provision of services to BVNA and BHC.

(6) HHC provides no services or other contributions to any private, for-profit, individuals or entities.

The parties also submitted to the court five sets of documents regarding the following entities: HHC,

BVNA, Phoebe Care Connection, Berks Home Care and Visiting Nurse Association of Pottstown and vicinity.

In its prehearing memorandum, HHC alleges:

(1) HHC is not engaged in "business activity" and, therefore, any revenues or receipts are excluded from taxation;

(2) HHC is otherwise exempt from taxation pursuant to both the HUP test and the Institutions of Purely Public Charities Act of 1997;

(3) Pursuant to section 375(g) of the Institutions of Public Charities Act, HHC, BVNA, BHC, and VNAP may be considered as one entity for the purpose of establishing its compliance with the test for charitable exemption; and

(4) HHC is also exempt pursuant to the HUP Standards Act.

To determine who has the burden of going forward in this case, we look to Act 55. Act 55 provides for a presumption process, under section 376, and states, in pertinent part:

"*(a) Presumption determination.*—An institution of purely public charity possessing a valid exemption from the tax imposed by article II of the Act of March 4, 1971 (P.L. 6, no. 2), known as the Tax Reform Code of 1971, shall be entitled to assert a rebuttable presumption regarding that institution's compliance with the criteria set forth in section 5 as follows:

"(1) An institution of purely public charity that has annual program service revenue less than $10,000,000 shall be entitled to assert the presumption if the institution possesses a valid exemption under section 204(10) of the Tax Reform Code of 1971.

"*(b) Burden of proof.*—If an institution of purely public charity asserts a presumption under subsection (a), a

political subdivision challenging that institution before a government agency or court shall bear the burden, by a preponderance of the evidence, of proving that the institution of purely public charity does not comply with the requirements of section 5."

Under section 385, *Applicability,* subsection (c), *Presumption,* it states:

"No institution of purely public charity may assert a presumption pursuant to section 6 until that institution's exemption under section 204(10) of the Tax Reform Code of 1971 is granted or renewed on or after the effective date of this section. 1997, Nov. 26, P.L. 508, no. 55, §15, imd. effective."

HHC has an annual program service revenue of less than $10,000,000. Stipulation of facts, no. 2. HHC was granted an exemption under section 204(10) of the Tax Reform Code of 1971. It was dated May 14, 1999, and states that it was effective from June 6, 1998. Stipulation of facts, exhibit A, 2. HHC was granted an exemption under section 204(10) on or after November 26, 1997. Therefore, we find that HHC may assert the rebuttable presumption regarding HHC's compliance with the criteria for a "purely public charity."

The next inquiry is whether HHC can meet the criteria for a purely public charity under Act 55. A statute is generally applied prospectively. *Sanders v. Loomis Armored Inc.,* 418 Pa. Super. 375, 379, 614 A.2d 320, 322 (1992), *alloc. denied,* 535 Pa. 661, 634 A.2d 224 (1993). "No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S. §1926 (Supp. 1978-79). While the Statutory Construction Act makes no distinctions based on the type of statute, the Superior Court has distin-

guished between statutes affecting procedural matters and those altering substantive rights. *Stroback v. Camaioni,* 449 Pa. Super. 395, 400-401, 674 A.2d 257, 260 (1996), citing *Misitis v. Steel City Piping Co.,* 441 Pa. 339, 272 A.2d 883 (1971). Only where no substantive right or contractual obligation is involved may a subsequently enacted statute be applied to a condition existing on its effective date where the condition results from events occurring prior to the effective date of that statute. *Stroback, supra,* 449 Pa. Super. at 400-401, 674 A.2d at 260. (citations omitted) The distinction between procedural and substantive matters can be elusive. "A newly enacted law may be applied retroactively if it impairs no contract and disturbs no vested right, but only varies remedies, cures defects in proceedings otherwise fair, and does not vary existing obligations contrary to their situation when originally undertaken." *Schroeder v. Schrader,* 453 Pa. Super. 59, 65, 682 A.2d 1305, 1308 (1996). (citations omitted)

Initially, we must determine if the General Assembly clearly and manifestly intended for Act 55 to be applied retroactively. We first look to section 372, *Legislative intent,* for the resolution of this issue. It states, in pertinent part:

*"(a) Findings.*—The General Assembly finds and declares as follows:

"(1) It is in the best interest of this Commonwealth and its citizens that the recognition of tax-exempt status be accomplished in an orderly, uniform and economical manner.

"(4) Lack of specific legislative standards defining the term 'institutions of purely public charity' has led to increasing confusion and confrontation among tradition-

ally tax-exempt institutions and political subdivisions to the detriment of the public.

"(5) There is increasing concern that the eligibility standards for charitable tax exemptions are being applied inconsistently, which may violate the uniformity provision of the Constitution of Pennsylvania.

"*(b) Intent.*—It is the intent of the General Assembly to eliminate inconsistent application of eligibility standards for charitable tax exemptions, reduce confusion and confrontation among traditionally tax-exempt institutions and political subdivisions and ensure that charitable and public funds are not necessarily diverted from the public good to litigate eligibility for tax-exempt status by providing standards to be applied uniformly in all proceedings throughout this Commonwealth for determining eligibility for exemption from state and local taxation which are consistent with traditional legislative and judicial applications of the constitutional term 'institutions of purely public charity.' "

We find that the General Assembly clearly and manifestly intended for Act 55 to be applied retroactively.

Second, we look to the criteria for a "purely public charity" under Act 55 and prior to Act 55.[1] Under Act 55, section 375, the entity must meet this criteria:

(b) Charitable purpose,

(c) Private profit motive,

(d) Community service,

(e) Charity to persons and

---

1. No one has challenged the constitutionality of Act 55 in these proceedings, and we cannot properly challenge it sua sponte on constitutional grounds. *Wiegand v. Wiegand,* 461 Pa. 482, 337 A.2d 256 (1975); *Commonwealth v. Boerner,* 281 Pa. Super. 505, 422 A.2d 583 (1980). The Wilson School District failed to file its response to HHC's prehearing memorandum; thus, we will apply the statute as written.

(f) Government service.

Prior to Act 55, the Pennsylvania Supreme Court, in *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985), set forth the following standards:

"(a) Advances a charitable purpose;

"(b) Donates or renders gratuitously a substantial portion of its services;

"(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

"(d) Relieves the government of some of its burden; and

"(e) Operates entirely free from private profit motive." *Id.* at 22, 487 A.2d at 1317.

We find the criteria in Act 55 consistent with judicial applications of the criteria outlined in *HUP.* Act 55 does not change the substance of what must be proven; it provides for uniformity and a shift of the burden of proof.

We find that applying the criteria in Act 55 impairs no contract and disturbs no vested rights. It only cures a defect in an otherwise fair proceeding, that is, the inconsistent application of the eligibility standards for charitable tax exemptions.

Therefore, we hold that HHC has a rebuttable presumption of exemption, and the Wilson School District shall bear the burden of proof, by a preponderance of the evidence, that HHC does not meet the requirements under Act 55 for a "purely public charity."

Next, we must determine if HHC, BVNA, BHC and VNAP may be considered as one entity for the purpose of establishing its compliance with the test for charitable exemption. Section 375(g) of Act 55 provides:

"(f) *Other nonprofit entities.*—A nonprofit parent corporation, together with all of its subsidiary nonprofit

corporations, may elect to be considered as a single institution in meeting the criteria set forth in this section as long as all of the following are met:

"(1) Each subsidiary:

"(i) is a nonstock corporation of which the nonprofit parent corporation is only a member; and

"(ii) meets the requirements of this section.

"(2) The parent:

"(i) is a nonstock corporation;

"(ii) is qualified by the Internal Revenue Service as meeting the requirements of section 501(c)(3) of the Internal Revenue Code of 1986 (26 U.S.C. §501(c)(3));

"(iii) meets the requirements of subsection (b) and (c); and

"(iv) except for services that meet the requirements of this section, does not render services for a fee to an individual or entity that does not meet the requirements of paragraph (1)."

HHC is before the court on the issue of compliance with the requirements set forth in section 375. It is the parent corporation which may elect to be considered as a single institution in meeting the criteria in section 375. Therefore, HHC must be the parent corporation of the other entities in order to be entitled to the election.

Act 55 does not define a "parent corporation." Black's Law Dictionary defines a parent corporation as, "A corporation that has a controlling interest in another corporation (called a subsidiary corporation), usually through ownership of more than one-half the voting stock." Black's Law Dictionary 344 (7th ed. 1999).

Berks Visiting Nurse—Home Health Agency was incorporated on June 9, 1916, and its name was changed to Berks Visiting Nurse Association Inc. on July 1, 1987.

(Exhibit B, 4.) Berks Visiting Nurse Association Inc. was reorganized into three separate corporations on July 1, 1987. To effect the reorganization, BVNA created BHC and HHC. Under article VIII of the articles of incorporation of BVNA, entitled membership, it states that the sole member of the corporation shall be Home Health Care Management Inc., having the sole voting rights as the member of the corporation. (Exhibit B, 4, p. 4.)

Visiting Nurse Association of Pottstown and vicinity was incorporated on December 22, 1944, and its articles of incorporation were amended on November 1, 1998. (Exhibit E, 5.) The sole member of the VNAP is HHC. (Exhibit E, 6, p. 2.)

Berks Home Care Inc. was incorporated on July 1, 1987. (Exhibit D, 3.) The sole member of BHC is HHC. (Exhibit D, 3, p. 3.)

After reviewing the aforementioned documents, we find that HHC is the parent corporation of BVNA, BHC and VNAP. Therefore, it can elect to be considered as a single institution with these entities for the purpose of meeting the criteria under Act 55 for a purely public charity.

Accordingly, we enter the following order:

## ORDER

And now, February 17, 2000, it appearing that Home Health Care Management Inc. has filed a challenge to the determination of the Wilson School District that it is liable for business privilege taxes pursuant to Wilson School District's business privilege tax resolution and regulations, it is hereby ordered and decreed that Home Health Care Management Inc. has a rebuttable presumption that it is a purely public charity, and the Wilson

School District shall have the burden of proof to establish that Home Health Care Inc. does not meet the criteria for a purely public charity, as outlined in Act 55, 10 P.S. §375(b), (c), (d), (e) and (f).

It is further ordered that Home Health Care Management Inc., as the parent corporation, can elect to be considered as one entity with its subsidiary nonprofit corporations, under Act 55, section 375(g).

An evidentiary hearing in this matter shall be held on March 16, 2000, at 9:30 a.m. o'clock in the courtroom assigned to the undersigned.